FILED
2006 Aug-01  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **MALLORY PARTON, by and through her next-of-kin and parents, Lisa Parton and Patrick Parton, et al.,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) | **Case No. 2:06-CV-00706-VEH** |
| **v.** | ) ) ) | |
| **TALLADEGA CITY BOARD OF EDUCATION; et al.,** | ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This matter comes before the court on the Motion to Dismiss (doc. 5) filed by all Defendants in this action. The motion is opposed, has been fully briefed, and was the subject of a hearing, held on May 30, 2006, before the undersigned. After thorough consideration, the City's Motion to Dismiss is due to be **GRANTED IN PART** and otherwise **DENIED** as articulated herein.

## Facts and Procedural History[1]

This action was filed under Title II of the Americans with Disabilities Act of 1990 (hereinafter "ADA") and Section 504 of the Rehabilitation Act of 1973

---

[1]As it must, the court views all facts in a light most favorable to the Plaintiffs.

1

(hereinafter "Section 504").  In addition, Plaintiffs seek relief through claims of negligence, recklessness and wantonness, intentional inflection of emotional distress, invasion of privacy, and outrage.

Plaintiff Mallory Parton was 13 years of age and attended Zora Ellis Junior High School at the time this action was initiated.  She will attend Talladega High School upon her promotion to the next grade level.  Both institutions are public schools that are owned and operated by Defendants, Talladega City Board of Education.  Mallory Parton suffers from muscular dystrophy which causes her difficulty with mobility, strength, muscle coordination, muscle control, and balance. Due to her condition, she has great difficulty in walking, is unable to climb stairs, and cannot easily rise from a seated position. Mallory Parton's ability to perform daily life activities is restricted when compared to children of her age who do not suffer from a disability.[2]

Mallory Parton is a person with a disability, as defined by Section 504 of the Rehabilitation Act of 1976 (29 U.S.C.A. § 794, et seq.) and the Americans with Disabilities Act (42 U.S.C.A. § 12101, et seq.).  Lisa Parton and Patrick Parton are

---

[2]Mallory Parton requires an ADA compliant restroom for her use at school, an elevated toilet seat, adjustable height seating, raised writing surfaces, and ADA compliant ramps and handrails.  In addition, vehicles which transport Ms. Parton must be equipped to accommodate wheelchairs and motorized scooters.

her parents.  The Alabama Disabilities Advocacy Program (ADAP) is a federally mandated protection and advocacy program for persons with disabilities in Alabama. ADAP is authorized to perform its congressional mandate under the Protection and Advocacy for Individual Rights Act (PAIR Act) (29 U.S.C.A. § 794e) and other federal laws.  Defendants are a city board of education, its board members, and its officials.

Defendants filed the instant motion to dismiss and a brief in support thereof stating that this action is due to be dismissed because: (1) Plaintiff, Mallory Parton, failed to exhaust her administrative remedies under the Individuals with Disabilities Education Act (IDEA); (2) Plaintiffs, Lisa Parton, Patrick Parton, and ADAP, failed to exhaust the administrative procedures mandated by the IDEA; (3)ADAP lacks standing to pursue its claims; (4) the claims against the individually named Defendants in their official capacities are duplicative of claims against the Talladega City Board of Education; (5) Plaintiffs' state law claims against all Defendants are barred by 11th Amendment Immunity, and (6) Plaintiffs' state law claims against all Defendants are barred by Sovereign Immunity Under Article I, Section 14, Constitution of Alabama (1901).

## Standard of Review

A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond

a doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002)(citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)).

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003)(quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)). Furthermore, "[a] complaint may not be dismissed because the Plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)(emphasis in original)(citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)). "The threshold of sufficiency that a complaint must meet to survive a Motion to Dismiss for failure to state a claim is . . . 'exceedingly low.'" *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)(quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983)).

## Analysis

## I.     Plaintiffs are not subject to the administrative procedures established under the IDEA.

"The IDEA, as the successor to the Education of the Handicapped Act, represents an ambitious federal effort to promote the education of handicapped children." *M.M. v. School Board of Miami-Dade County, Florida*, 437 F.3d 1085, 1094 (11th Cir. 2006) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982) (internal marks omitted)).  The purpose of the IDEA is, in part, "to ensure that all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C.A. § 1400(d)(1)(A).  "All children with disabilities ... 'who, by reason thereof, need [ ] special education and related services' fall within the IDEA's scope." *M.M.*, 437 F.3d at 1094 (quoting 20 U.S.C.A. § 1401(3)(A) & (B)).  "Special education" is defined as "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability including – instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings <u>and</u> instruction in physical education." 20 U.S.C.A. § 1401(29)(A) & (B) (emphasis added).  "Related services" include "transportation, and such developmental, corrective, and other supportive

services ... as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in the children."  20 U.S.C.A. § 1401(26)(A).

The ultimate goal of the IDEA is to provide a child with a free and appropriate public education.  *See M.M.*, 437 F.3d at 1095.  In order to achieve this goal, a school board is required to formulate an Individual Education Program (IEP) through an IEP committee.  *See id*.  States are under a "child find" obligation or "a parent is required to notify a school board or other public agency that it wishes to place a child in special education services."  *Id.*  "The parent then consents to have the child evaluated to determine whether the child is a child with a disability" as defined under the IDEA.  *Id*.  An IEP is formulated once a child is evaluated by the State and determined to have a disability under the IDEA.

The instant case provides the court with a unique situation which has not yet been contemplated by the 11th Circuit.  Defendants assert that Plaintiffs' claims are due to be dismissed in light of Plaintiffs' failure to exhaust their administrative remedies under the IDEA. In support of this position, Defendants contend that a child with a disability as defined under the ADA is, per se, a child with a disability as defined under the IDEA.  This first contention is stated by Defendants without

accompanying support or analysis.[3]  Second, Defendants argue that Plaintiffs are

seeking remedies which are available under the IDEA; therefore, that Plaintiffs must

first navigate the administrative procedures of the IDEA prior to initiating a civil

action under any other statute or legal theory.

    In an effort to bolster their position, Defendants cite this court to precedent

which, according to Defendants, stands for the proposition that whenever a child or

a child's representative brings, on behalf of that child, a civil action alleging

violations of the ADA or § 1983, that the child must first exhaust all administrative

---

[3]The parties do not cite, and this court is unaware of, any authority which supports
Defendants' position that a child with a disability as defined under the ADA is presumed to be a
child with a disability as defined in the IDEA.

    Under the IDEA:

    The term "child with a disability" means a child--

    **(i)** with mental retardation, hearing impairments (including deafness), speech or
    language impairments, visual impairments (including blindness), serious
    emotional disturbance (referred to in this chapter as "emotional disturbance"),
    orthopedic impairments, autism, traumatic brain injury, other health impairments,
    or specific learning disabilities; and

    **(ii)** who, by reason thereof, needs special education and related services.

20 U.S.C.A. § 1401 (3)(A).  A "disability" is defined under the ADA as, "a physical or mental
impairment that substantially limits one or more of the major life activities of such individual; a
record of such an impairment; or being regarded as having such an impairment."  42 U.S.C.A. §
12102 (2).  The definition of a "child with a disability" under the IDEA is considerably more
restrictive than the definition of a "disability" pursuant to the ADA.  As such, the court concludes
that a child who would qualify as being disabled for purposes of filing suit pursuant to the ADA
would not, per se, qualify as "a child with a disability" under the IDEA.

remedies available under the IDEA. *See M.M. ex rel. C.M. v. School Bd. of Miami-Dade County, Fla*. 437 F.3d 1085 (11th Cir. 2006); *M.T.V. v. DeKalb County School Dist.,* 446 F.3d 1153 (11th Cir. 2006); *Babicz v. School Bd. of Broward County,* 135 F.3d 1420 (11th Cir. 1998)*.*  The court agrees that, in each of the cases relied upon by Defendants, the 11th Circuit held that a plaintiff must first proceed under the IDEA prior to initiating court proceedings; however, in each of the cases cited by the Defendants, the plaintiffs were involved in special education programs, benefitted from related services, and had at least one developed IEP prior to initiating any litigation.  In other words, the plaintiffs in the cases relied upon by the Defendants were operating under the safeguards of the IDEA prior to commencing litigation pursuant to the ADA or § 1983, and each holding is limited accordingly.

In the case at bar, Ms. Parton's parents have never requested that their child be placed in special education.  Ms. Parton does not currently have nor has she ever had an IEP; in fact, Defendants specifically told Ms. Parton's parents that an IEP was not necessary.  Finally, the State has not, under its own initiative, ever evaluated Ms. Parton to determine whether she is a child with a disability under the IDEA nor has the State informed Ms. Parton's parents that she might qualify as a child with a disability under the IDEA.  These factors, which are not present in any of the cases cited by Defendants, readily distinguish the instant action from those cases.  In the

8

absence of authority which is on point, the court must examine the plain meaning of the statute to determine whether Mallory Parton must first exhaust her administrative remedies under the IDEA before proceeding with this action.

In order to trigger the IDEA's administrative procedures, a child must fall under the protection of the statute. Defendants contend that Mallory Parton is bound by the provisions of the IDEA in that she requires the "related services" referenced in the statute; however, the IDEA requires that "a child with a disability" need both special education <u>and</u> related services. *See M.M.*, 437 F.3d at 1094 (quoting 20 U.S.C.A. § 1401(3)(A) & (B)). Consequently, if a child does not require special education, then such a child does not fall within the scope of the IDEA.

Mallory Parton has never participated in special education. Defendants informed Mallory Parton's parents that special education would not be appropriate for their child. Because she does not "need special education," Mallory Parton cannot be "a child with a disability" as defined by the IDEA; therefore, she cannot be mandated to abide by the statute's administrative procedures. 20 U.S.C.A. § 1401(3)(A) & (B).

In addition, Defendants rely primarily on the Eleventh Circuit's opinion in *Babicz v. School Board of Broward County,* 135 F.3d 1420 (11th Cir.), *cert. denied,*525 U.S. 816, 119 S.Ct. 53, 142 L.Ed.2d 41 (1998), for the proposition that

9

any child suffering a disability, as defined under the ADA or the IDEA, must first navigate the administrative procedures mandated by the IDEA.  In *Babicz,* the Eleventh Circuit held, consistent with the Second and Seventh Circuits, that "claims asserted under Section 504 [of the Rehabilitation Act] and/or the ADA are subject to [IDEA's] requirement that litigants exhaust ... IDEA administrative procedures to obtain relief that is available under ... IDEA before bringing suit under Section 504 and/or the ADA." 135 F.3d at 1421 (relying on 20 U.S.C. § 1415(f)); *see also Frazier v. Fairhaven Sch. Comm.,* 276 F.3d 52, 65 (1st Cir.2002) (finding that IDEA's exhaustion requirement applies to "IDEA-based claim[s]" brought pursuant to § 1983).

Defendants' argument that Plaintiffs failed to exhaust IDEA's administrative procedures either misapprehends the nature of Plaintiffs' claims or rests on too broad a reading of *Babicz*.[4]  Plaintiffs' claims in this case are not that the Defendants denied Ms. Parton "a free and appropriate public education."  Rather, Plaintiffs assert causes

---

[4]The parties have not cited to, and the court is unaware of, any precedent which directs that a child must first exhaust all remedies under the IDEA prior to commencing litigation under an alternate statute or theory in a situation, such as the one currently before this court, where a child has not been evaluated under the IDEA prior to the commencement of the litigation and has not asserted that a defendant has violated a right to a free and appropriate public education.  On the contrary, when examining a School Board's argument, in light of the 11th Circuit's holding in *Babicz*, that a plaintiff could not assert claims pursuant to § 1983 without first exhausting his administrative remedies under the IDEA, a United States District Court for the Middle District of Florida held that a School Board's reading of *Babicz* was entirely too broad and that a plaintiff could not be forced into the administrative channels of the IDEA when that plaintiff's claims are not brought under the premise that a defendant violated his right to a free and appropriate public education.  *See J.V. v. Seminole County School Board*, 2005 WL 1243756 (M.D. Fla. 2005).  The court finds the reasoning in *J.V.* persuasive as applied to the instant action.

of action pursuant to the ADA, Section 504, and put forth various state law based claims. Unlike the claims of the plaintiffs in *Babicz,* Plaintiffs' claims in this case are not IDEA-based. *Babicz,* 135 F.3d at 1421 (rejecting plaintiffs' attempt to bring a § 1983 claim based on the defendants' "alleged failure to provide [their disabled children] with equal educational opportunities"); *Frazier*, 276 F.3d at 58 n. 2 (noting that the plaintiff's § 1983 claim was premised "exclusively upon [her] alleged deprivation of [the] right to a free and appropriate public education). Thus, because Plaintiffs are not seeking "relief that is available under ... IDEA," they have no obligation to exhaust the statute's administrative procedures before bringing their claims.

In addition, because Mallory Parton does not fall within the scope of the IDEA, Plaintiffs, Lisa Parton, Patrick Parton, and ADAP, were not under an obligation to exhaust the administrative procedures of the IDEA prior to asserting their associational claims in this action.

## II.   ADAP's claims are not barred by the doctrine of associational standing.

Defendants contend that ADAP's claims on its own behalf fail due to a lack of organizational standing. ADAP alleges that it "has been forced to expend significant time and resources to address these problems [at Mallory Parton's school] and to combat the Defendants' violations of the rights of its students with disabilities." (Pl.

Compl., ¶ 12).[5]

The concept of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In order to demonstrate organizational standing under Article III, a plaintiff must show that: (1) it has suffered an "injury in fact" that is (a) concrete and particularized <u>and</u> (b) actual or imminent, not merely conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to being merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560-61, 112 S.Ct. 2130. Defendants do not contest whether ADAP's injury is fairly traceable to the challenged action of the Defendants or that it is likely that the injury will be redressed by a decision which is favorable to ADAP; accordingly, the court will not offer analysis as to those prongs of the *Lujan* test.

However, Defendants challenge whether ADAP has suffered an "injury in fact" as a result of Defendants' alleged actions. The thrust of Defendants' argument is that Article III standing is not established when an organization's injury is the result of

---

[5]Defendants presume that this court would dismiss ADAP's claims on behalf of unnamed students, who are similarly situated to Mallory Parton, suffering as a result of Defendants' conduct due to ADAP's failure to exhaust the administrative remedies under the IDEA. Because the court holds contrary to Defendants' presumption, each of the Defendants' arguments premised on that presumption fails. Nonetheless, the court will analyze whether ADAP has standing to assert claims on its own behalf.

the expenditure of resources during the course of litigation against a defendant.  *See Tennessee Protection and Advocacy, Inc. v. Board of Educ. of Putnam County, Tenn.*, 24 F.Supp.2d 808, 818 (M.D. Tenn. 1998).  While the court agrees that Defendants accurately state the law, the application of this doctrine as the foundation of a determination that ADAP lacks organizational standing would be misplaced.

In *Havens Realty Corp. v. Coleman*, the United States Supreme Court held that where "concrete and demonstrable injury to [an] organization's activities-with the consequent drain on the organization's resources-constitutes far more than simply a setback to the organization's abstract social interests" the organization is supplied with an "injury in fact" even if the organization's claims are "broadly alleged."  455 U.S. 363, 379, 102 S.Ct. 1114, 1124-1125 (1982).  "The *Havens* court regarded the identification and combating of discrimination as a concrete and demonstrable injury, which could syphon an organization's resources and give rise to an organization's direct standing to sue."  *Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co., Inc.*, 236 F.3d 629, 642 (11th Cir. 2000) (internal marks omitted).

In the instant case, ADAP did not create an injury to itself by initiating litigation against Defendants and then offering that its "injury in fact" is the expense incurred as a result of the litigation.  Rather, ADAP broadly alleges a drain on its resources, tapped prior to the filing of this action, as a result of Defendants' alleged

unlawful actions.  The very purpose of ADAP is to advocate for the rights of disabled persons and to combat, in part, discrimination against those persons.  Under the facts of this case, ADAP has successfully alleged an "an injury in fact" sufficient to satisfy the first prong of *Lujan*.  As neither the second or third elements of *Lujan* are challenged by Defendants, the court concludes that ADAP has organizational standing to pursue claims on its own behalf.

### III.   The claims against the individually named Defendants in their official capacities are duplicative of claims against the Board of Education and are due to be dismissed.[6]

Plaintiffs assert official capacity claims against Talladega City Board of Education Superintendent Leonard Messer, Talladega City Board of Education Special Education Coordinator Douglas Campbell, and Talladega City Board of Education members Mary McGhee, James Braswell, Joe Hare, Bonnie Miller, and Shirley Simmons.[7]

When analyzing the propriety of a plaintiff's assertion of an official capacity claim, pursuant to 42 U.S.C.A. § 1983, against municipal officers and an accompanying § 1983 claim against the municipality itself, the 11th Circuit Court of

---

[6]Plaintiffs failed to respond to Defendants' arguments on this point.

[7]In their Complaint, Plaintiffs do not state which of the six counts are asserted against these individuals nor is there any specific allegation of wrongdoing on the part of these individuals.

Appeals held that, because "suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). Although the foregoing decision is based on the Court's discussion of § 1983 claims, the rationale is equally applicable to the instant action. If Plaintiffs were successful, the relief they seek can only be afforded by the Talladega City Board of Education and not by any individually named Defendant in his or her official capacity.

In addition, the United States Supreme Court stated that:

> In *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court sought to eliminate lingering confusion about the distinction between personal and official capacity suits. We emphasized that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.,* at 165, 105 S.Ct., at 3104 (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U.S., at 166, 105 S.Ct., at 3105. Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.

*Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361-362 (1991). Accordingly, Plaintiffs' official capacity claims are duplicative of claims asserted against the

Talladega City Board of Education and are due to be dismissed.

IV.     **Plaintiffs' state law claims against the Talladega City Board of Education are barred.**

        A.     **As a matter of law, the Talladega City Board of Education has not established a right to Eleventh Amendment immunity against Plaintiffs' state law claims.**[8]

Defendants argue that all state law claims against the Talladega City Board of Education are barred by Eleventh Amendment immunity.  The Eleventh Amendment provides immunity from suit against a State by limiting a federal court's power over the case.  U.S. Const. Amend. XI.  A State cannot be sued in federal court without the State's consent.[9]  *See Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  A defendant need only be an "arm of the State" to enjoy Eleventh Amendment immunity.  *See id.*  "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."  *Id.* (citing *Shands Teaching Hosp. & Clinics v. Beech St. Corp.,* 208 F.3d 1308, 1311 (11th Cir. 2000) ("The pertinent inquiry is not into the nature of [an entity's] status in the abstract, but its function or

---

[8]Plaintiffs do not rebut Defendants' position as to Eleventh Amendment immunity; nonetheless, the court has thoroughly analyzed Defendants' uncontested contentions.

[9]Congress has not overridden Alabama's immunity with regard to the state law claims asserted against the Talladega City Board of Education nor has Alabama consented to be sued or waived its immunity on such claims.

role in a particular context.")).

"In Eleventh Amendment cases, this Court uses four factors to determine whether an entity is an "arm of the State" in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309. Prior to applying the four-factor test, this court must examine Alabama law and the relationship between the Talladega City Board of Education and the State of Alabama.  "The issue of whether an entity is an 'arm of the State' for Eleventh Amendment purposes is ultimately a question of federal law."  *Id*.

The Alabama Supreme Court has determined that city boards of education are agencies of state government and that those boards serve a state function:

> County boards of education are not agencies of the counties, but local agencies of the state, charged by the legislature with the task of supervising public education within the counties. *See* §§ 16-8-8, -9, Code 1975; *Clark v. Jefferson County Board of Education,* 410 So.2d 23, 27 (Ala.1982). They execute a state function-not a county function-namely, education. *Sims v. Etowah County Board of Education,* 337 So.2d at 1317 (Faulkner, J., dissenting), *citing* Alabama Constitution, Art. 13, § 256. Therefore, they partake of the state's immunity from suit to the extent that the legislature authorizes. *Sims v. Etowah County Board of Education,* 337 So.2d at 1316; *Enterprise City Board of Education,* 348 So.2d at 738, n. 2.

*Hutt v. Etowah County Bd. of Educ.*, 454 So.2d 973, 974 (Ala. 1984).

There is no evidence before this court to allow for an examination of the relationship between the Talladega City Board of Education and the State of Alabama.  Furthermore, this court simply cannot hold, at this time, that the Talladega City Board of Education satisfies the four prongs of the *Manders* test.  State law clearly dictates that the Talladega City Board of Education is an agency of the state.  However, this court is unaware of the degree of control Alabama exercises over the Talladega City Board of Education, nor is it clear from the record and pleadings before this court where the entity derives its funds.  While it stands to reason that, as an agency of the state, any judgments against the Talladega City Board of Education might ultimately be the responsibility of the state, there is no evidence or argument before the court on this crucial issue.

Accordingly, as a matter of law, the court must determine that, based on the record before the court, the Talladega City Board of Education has not established that it is protected under Eleventh Amendment immunity from the state law claims asserted by Plaintiffs.

**B.     Plaintiffs' state law claims against the Talladega City Board of Education are barred by sovereign immunity pursuant to Article I, Section 14, Constitution of Alabama (1901).**[10]

---

[10]Plaintiffs do not rebut Defendants' position as to sovereign immunity; nonetheless, the court has thoroughly analyzed Defendants' uncontested contentions.

Defendants contend that Plaintiffs' state law claims against the Talladega City Board of Education are barred by absolute sovereign immunity under Article I, Section 14, Constitution of Alabama (1901).

In *Louviere v. Mobile County Board of Education*, 670 So.2d 873, 877 (Ala. 1995), the Court  noted that:

> Article I, § 14, Ala. Const. (1901), provides "That the State of Alabama shall not be made a defendant in any court of law or equity." This is the basis for the doctrine of sovereign immunity. County boards of education, as local agencies of the State, enjoy this immunity.

When applicable, Article I, § 14 "removes subject-matter jurisdiction from the courts" and results in the dismissal of claims against the State.  *Alabama State Docks Terminal Ry. v. Lyles*, 797 So. 2d 432, 435 (Ala. 2001).  City boards of education, like county boards of education, are local agencies of the State:

> City boards of education are authorized by the legislature. Like county school boards, they are agencies of the state, empowered to administer public education within the cities. As such, a city school board is not a subdivision or agency of the municipal government.  A city school board's relation to the city is analogous to a county school board's relation to the county.

*Enterprise City Bd. of Ed. v. Miller*, 348 So.2d 782, 783 (Ala. 1977) (internal citations omitted).  Under Alabama law, the Talladega City Board of Education is,

therefore, an agency of the state.[11]   Accordingly, Plaintiffs' state law claims against

the Talladega City Board of Education are barred by sovereign immunity.

A separate Order will be entered consistent with this Memorandum Opinion.

**DONE** this 1st day of August, 2006.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[11]Although the parties neglected to brief the court on this issue, a sovereign immunity analysis does not end with the determination that the Talladega City Board of Education is a state agency and is therefore immune from suit under Article I, § 14.  Rather, it is necessary to be certain that this case does not fall within one of the four common law exceptions to the doctrine of sovereign immunity.  They include:

(1)   Actions brought to compel State officials to perform their legal duties;

(2)   Actions brought to enjoin State officials from enforcing an unconstitutional law;

(3)   Actions to compel State officials to perform ministerial acts; and

(4)   Actions brought under the Declaratory Judgments Act, Tit. 7, § 156 eq seq., Code 1940, seeking construction of a statute and how it should be applied in a given situation.

See *Aland v. Graham*, 250 So. 2d  677, 679 (Ala. 1971) (internal citations omitted).  The court concludes that none of Plaintiffs' state law claims fall within one of the exceptions to the doctrine of sovereign immunity.