FILED
2007 Jul-16 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MALLORY PARTON**, by and through her next-of-kin and parents, Lisa Parton and Patrick Parton, et al., | ) ) ) ) ) |
| Plaintiffs, | ) ) Case No. 2:06-CV-00706-VEH |
| v. | ) ) ) |
| **TALLADEGA CITY BOARD OF EDUCATION,** | ) ) ) |
| Defendant. | ) ) |

_____

## **MEMORANDUM OPINION**

Before the court are Plaintiffs' Motion to Strike Defendant's Answer (doc. 57) and Plaintiffs' Motions to Strike Defendant's Motions for Summary Judgment. (docs. 48, 40, respectively).

All parties have submitted briefs in response to Plaintiffs' Motions to Strike. Having considered the parties' submissions, the court finds that it lacks subject matter jurisdiction to hear Plaintiffs' claims in this case, and that Plaintiffs' Motions to Strike are accordingly due to be **DENIED** as **MOOT**. Additionally, because the court lacks subject matter jurisdiction to hear Plaintiffs' claims, this action is due to

be dismissed without prejudice.[1]

## I.   FACTUAL HISTORY

Plaintiff Mallory Parton (hereinafter "Ms. Parton") was 13 years of age and attended Zora Ellis Junior High School at the time this action was initiated. (doc. 1, ¶¶ 6, 20). When Plaintiffs filed their complaint, Ms. Parton planned to attend Talladega High School upon her promotion to the next grade level. (Id., ¶ 20). Both institutions are public schools that are owned and operated by Defendant. (Id.).

Ms. Parton suffers from muscular dystrophy, which causes her difficulty with mobility, strength, muscle coordination, muscle control, and balance. (Id., ¶ 21). Due to her condition, she has trouble walking, and is unable to climb stairs or easily rise from a seated position. (Id.). Ms. Parton requires an ADA-compliant restroom for her use at school, in addition to adjustable height seating, raised writing surfaces, and ADA-compliant ramps and handrails. (doc. 1, ¶¶ 31-33). She also requires transportation to and from school that accommodates wheelchairs and motorized scooters. (Id., ¶ 37). Ms. Parton's ability to perform daily life activities is restricted

---

[1] FED. R. CIV. P. 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." The court in *Hope v. Cortines*, 872 F.Supp. 14 (E.D.N.Y. 1995), *aff'd*, 69 F.3d 687 (2nd Cir. 1995), dismissed *sua sponte* the plaintiffs' claims brought under the ADA due to the plaintiffs' failure to exhaust the administrative procedures under the Individuals with Disabilities Education Act (hereinafter "IDEA"). As discussed *infra*, the Eleventh Circuit cited to *Hope v. Cortines*, 69 F.3d 687, in reaching a similar conclusion as a matter of first impression in this circuit. See *Babicz v. School Bd. of Broward County*, 135 F.3d 1420 (11th Cir. 1998).

as compared to children of her age who do not suffer from a disability. (Id.).

## II.   PROCEDURAL HISTORY

Ms. Parton is a person with a disability as defined by § 504 of the Rehabilitation Act of 1973 (29 U.S.C.A. § 794, *et seq*.) and the Americans with Disabilities Act (42 U.S.C.A. § 12101, et seq., hereinafter "ADA"). Lisa and Patrick Parton are her parents. (doc. 1, ¶ 7). The Alabama Disabilities Advocacy Program (hereinafter "ADAP") is a federally mandated protection and advocacy program for persons with disabilities in Alabama. (Id., ¶ 11). ADAP is authorized to perform its congressional mandate under the Protection and Advocacy for Individual Rights Act (PAIR Act) (29 U.S.C.A. § 794e) and other federal laws. (Id.).

On April 7, 2006, ADAP, Ms. Parton, and her parents (hereinafter "Plaintiffs") filed this action under Title II of the ADA and Section 504 of the Rehabilitation Act of 1973 (hereinafter "Section 504"). (doc. 1, ¶ 1). Defendant responded by filing its Motion to Dismiss Plaintiffs' claims on May 3, 2006. (doc. 5). The court entered an Order on August 1, 2006 granting the motion in part and denying it in part.[2]

When the parties failed to reach a settlement through mediation, Plaintiffs filed

---

[2] The motion was granted as to Plaintiffs' State law claims of negligence, recklessness, and wantonness (Count III), intentional infliction of emotional distress (Count IV), invasion of privacy (Count V), and outrage (Count VI), as well as all claims against individual defendants named as parties to the original complaint. (doc. 18). The motion was denied as to Plaintiffs' federal law claims under the ADA and § 504 of the Rehabilitation Act. (Id.).

a motion for summary judgment (doc. 39) and Defendant filed two motions for summary judgment.[3] (docs. 40, 43). Defendant did not file an answer to Plaintiffs' complaint until three days after filing its motions for summary judgment. (doc. 56).

Plaintiffs responded by filing three Motions to Strike, one for each of Defendant's motions for summary judgment (docs. 48, 51), and a third as to Defendant's answer. (doc. 57). The court stayed any response to the motions for summary judgment and entered a briefing schedule on the motions to strike. (doc. 58). The parties have filed responsive submissions (docs. 60, 63), and the motions to strike are now ripe for review.

### III. ANALYSIS

Federal courts are courts of limited jurisdiction; thus, a federal court must take care to ensure that it has jurisdiction to hear all cases that come before it. See *Rembert v. Apfel,* 213 F.3d 1331, 1333-34 (11th Cir.2000). To that end, a district court must always answer the question whether it has subject matter jurisdiction to hear a case, even if no party raises the question of jurisdiction by motion. See *Id.; Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir.2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court

---

[3] Defendant filed separate motions for summary judgment, one as to the claims of Ms. Parton and her parents, the other as to the claims of ADAP. (docs. 40, 43, respectively).

must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.").

The present action raises a jurisdictional issue which the court, *sua sponte,* will address before it proceeds further.  See *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP,* 365 F.3d 1244, 1245 (11th Cir. 2004).

In its motion to dismiss, Defendant argued that Plaintiffs failed to exhaust the IDEA's administrative procedures under the Individuals with Disabilities Education Act (hereinafter "IDEA") before pursuing this action in federal court.  Defendant argued that Plaintiffs' failure to satisfy IDEA exhaustion deprives the court of subject matter jurisdiction to hear their claims.  The court disagreed, finding that Plaintiffs' claims were outside the scope of the IDEA. (doc. 17).  Upon reviewing the pleadings and submissions of the parties, as well as the relevant statutory and caselaw, the court finds that reconsideration of this conclusion is appropriate.

To be covered by the IDEA, a claimant must be considered a "child with a disability," defined as a child

> (i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . , <u>orthopedic impairments</u>, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special

education and related services.

20 U.S.C. § 1401(3)(A) (emphasis added).

> The term "special education" means specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and <u>in other settings</u>; and (B) instruction in physical education.

20 U.S.C. § 1401(29) (emphasis added).

> The term "related services" means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability <u>to benefit from special education</u>, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26)(A) (emphasis added).

Having reconsidered the nature of Ms. Parton's disability, the court finds that Plaintiffs' claims could have been asserted under the IDEA. Consistent with the above-quoted statutory language, Ms. Parton may require that a tutor visit her home to provide her with a "free and appropriate public education," thereby avoiding the necessity of renovating Defendant's facilities. Such relief is afforded by the IDEA.

See 20 U.S.C. § 1401(29).  While Plaintiffs request that this court (1) award compensatory damages, and (2) order Defendant to renovate its facilities to offer equal access to disabled students, the application of the IDEA's administrative process is not limited to cases where the plaintiff actually requests relief that is available under the IDEA.  See *Babicz v. School Bd. of Broward County*, 135 F.3d 1420, 1422 n. 10 (11th Cir. 1998).

> The [IDEA] speaks of available relief, and what relief is "available" does not necessarily depend on what the aggrieved party wants. . . . [E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.  FED. R. CIV. P. 54(c).  The nature of the claim and the governing law determine the relief no matter what the plaintiff demands.  [ ]  [T]he theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply.  Several district courts have used this principle to hold that the pleadings in court do not end the analysis under [the IDEA], and we think these decisions right.

*Charlie F. by Neil F. v. Bd. of Educ. of Skokie School Dist. 68*, 98 F.3d 989 (7th Cir. 1996).

It is also immaterial that Plaintiffs do not assert their claims under the IDEA. The Eleventh Circuit has addressed the applicability of the IDEA's exhaustion requirement to claims asserted under the ADA and Rehabilitation Act by students with disabilities against a local school board, and concluded that such claims are subject to exhaustion as if they claims had been originally asserted under the IDEA.  See *Babicz*

*v. School Bd. of Broward County*, 135 F.3d 1420, 1422 (11th Cir. 1998), citing *Hope v. Cortines*, 69 F.3d 687 (2nd Cir. 1995).

The IDEA's rules of construction provide that

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 *et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities, <u>except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the [administrative] procedures [of the IDEA] shall be exhausted to the same extent as would be required had the action been brought under this subchapter</u>.

20 U.S.C. § 1415(l) (emphasis added).

In *Hope v. Cortines*, 872 F.Supp. 14 (E.D.N.Y. 1995), *aff'd*, *Hope v. Cortines*, 69 F.3d 687, the court explained that

> [the] IDEA is not the exclusive avenue by which parents may enforce the rights of disabled children and, therefore, they may invoke other federal statutes to accomplish the same goals. <u>This right to pursue remedies through other federal statutes is conditioned, however, upon section 1415(f)'s second component, which requires exhaustion of [the] IDEA's administrative procedures prior to commencement of the lawsuit if the relief sought is also available under [the] IDEA</u>.

*Hope*, 872 F.Supp. at 17 (emphasis added).

The conclusion in *Babicz* is supported by recent decisions by the Eleventh Circuit, including *M.T.V. v. DeKalb County School Dist.*, 446 F.3d 1153 (11th Cir.

2006), and *J.P. v. Cherokee County Bd. of Educ.*, 218 Fed. Appx. 911 (Feb. 27, 2007).[4]

In *M.T.V.,* the court explicated its decision in *Babicz* as follows: "whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in the state administrative proceedings." *M.T.V.*, 446 F.3d at 1158.

In *J.P.*, the court explained that "we have interpreted the IDEA's exhaustion requirement as applying to a 'broad' spectrum of claims," and found that "'*any* matter *relating* to the . . . [free and appropriate public education]" of a disabled child is subject to IDEA exhaustion. *J.P.*, 218 Fed. Appx. at 913, quoting *M.T.V.*, 446 F.3d at 1158 (emphasis in original). Because Ms. Parton's physical access to Defendant's school buildings is "related" to her education, Plaintiffs' claims are subject to IDEA exhaustion. See *J.P.*, 218 Fed. Appx. at 913.[5]

---

[4] Fed. R. App. P. 32.1 provides: "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."

[5] In its Order of August 1, 2006, this court found persuasive authority, in support of its conclusion that Plaintiffs' claims are not subject to IDEA exhaustion, in *J.V. v. Seminole County School Board*, 2005 WL 1243756 (M.D.Fla. 2005). *J.V.* stands for the proposition that a disabled student's claims against his school board for violation of his constitutional right to due process are not subject to IDEA exhaustion. The court there acknowledged *Babicz*, but concluded, with little explanation, that *Babicz* did not reach the facts of the case before it. 2005 WL 1243756 at * 2. The court has reconsidered its former position on *J.V.*, and finds that case inapposite to the present action, because it is more clearly distinguishable from the *Babicz* line of cases than this case. Unlike *J.V.*, Plaintiffs do not assert due process violations, but bring claims that are within the scope of the IDEA. *Babicz*, 135 F.3d at 1421.

Hence, while Plaintiffs do not assert their claims under the IDEA, the Eleventh Circuit has explained that plaintiffs may not artfully plead around the IDEA merely to avoid its administrative prerequisites to federal court jurisdiction. See *Babicz*, 135 F.3d at 1422 n. 10, citing *Waterman by Waterman v. Marquette-Alger Intermediate School Dist.*, 739 F.Supp. 361, 365 (W.D.Mich.1990) ("[IDEA] exhaustion must occur before plaintiffs may file an action under any other federal law seeking relief that is also available under the [IDEA] . . . The fact that plaintiffs seek a particular type of relief ... not available under [IDEA] . . . is immaterial. To hold otherwise would allow [IDEA] plaintiffs to frustrate Congressional purpose by bypassing the administrative process in virtually every case containing [IDEA], section 504, or section 1983 damages claims").

Under the reasoning of *Babicz*, this court concludes that it may not exercise subject matter jurisdiction over Plaintiffs' claims until they have exhausted the IDEA's

---

Plaintiffs have argued against IDEA exhaustion, claiming that it would be futile to subject their claims to the IDEA's administrative process. Plaintiffs do not, however, offer any basis for this argument. While they aver that the issues presented in this case cannot be remedied by an administrative agency, Plaintiffs cite to no authority, binding or persuasive, in support of this proposition. In light of *Babicz* and *M.T.V.*, the court disagrees that Plaintiffs' ADA and Rehabilitation Act claims cannot be properly redressed via the IDEA's administrative process.

Plaintiffs also argue that exhaustion should be excused because Defendant never notified them of their procedural rights or administrative remedies under the IDEA. Plaintiffs argue that IDEA exhaustion in these circumstances would in some way violate their right to due process. With no basis for the court to find that Plaintiffs' due process rights will be violated by submitting to the administrative procedures available under the IDEA, the court cannot agree that IDEA exhaustion should be excused for this reason.

administrative process.  Consequently, this action is due to be dismissed.  A separate Order will be entered.

    **DONE** this the 16th day of July, 2007.

                                                          **VIRGINIA EMERSON HOPKINS**
                                                          United States District Judge