# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MALLORY PARTON, by and through her next-of-kin and parents, Lisa Parton and Patrick Parton, et al.,** ) ) ) ) ) | |
| **Plaintiffs,** ) ) | Case No. 2:06-CV-00706-VEH |
| **v.** ) ) | |
| **TALLADEGA CITY BOARD OF EDUCATION; et al.,** ) ) ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Before the court is the Motion of the Plaintiffs, Mallory Parton, Lisa Parton, Patrick Parton, and the Alabama Disabilities Advocacy Program (hereinafter "Plaintiffs") to Reconsider the court's Memorandum Opinion and Order dismissing the above-styled action for lack of subject matter jurisdiction (docs. 65, 66, respectively), entered on July 16, 2007.[1]  (doc. 67).  For the reasons set forth herein, the motion is due to be **DENIED**.

---

[1] Said Motion to Reconsider was filed by Plaintiffs on July 26, 2007.  (doc. 67).

I.     **FACTUAL HISTORY**[2]

Plaintiff Mallory Parton (hereinafter "Ms. Parton") was 13 years of age and attended Zora Ellis Junior High School at the time this action was initiated. (doc. 1, ¶¶ 6, 20). When Plaintiffs filed their complaint, Ms. Parton planned to attend Talladega High School upon her promotion to the next grade level. (Id., ¶ 20). Both institutions are public schools that are owned and operated by the Talladega City Board of Education (hereinafter "Defendant"). (Id.).

Ms. Parton suffers from muscular dystrophy, which causes her difficulty with mobility, strength, muscle coordination, muscle control, and balance. (Id., ¶ 21). Due to her condition, she has trouble walking, and is unable to climb stairs or easily rise from a seated position. (Id.). Ms. Parton requires an ADA-compliant restroom for her use at school, in addition to adjustable-height seating, raised writing surfaces, and ADA-compliant ramps and handrails. (doc. 1, ¶¶ 31-33). She also requires transportation to and from school that accommodates wheelchairs and motorized scooters. (Id., ¶ 37). Ms. Parton's ability to perform daily life activities is restricted as compared to children of her age who do not suffer from a disability. (Id.).

---

[2] The following factual and procedural histories are reproduced, in relevant part, from the court's Memorandum Opinion entered on July 16, 2007. (doc. 65).

## II. PROCEDURAL HISTORY

Ms. Parton is a person with a disability as defined by § 504 of the Rehabilitation Act of 1973 (29 U.S.C.A. § 794, *et seq*.) and the Americans with Disabilities Act (42 U.S.C.A. § 12101, *et seq*., hereinafter "ADA"). Lisa and Patrick Parton are Ms. Parton's parents. (doc. 1, ¶ 7). The Alabama Disabilities Advocacy Program (hereinafter "ADAP") is a federally mandated protection and advocacy program for persons with disabilities in Alabama. (Id., ¶ 11). ADAP is authorized to perform its congressional mandate under the Protection and Advocacy for Individual Rights Act (PAIR Act) (29 U.S.C.A. § 794e) and other federal laws. (Id.).

On April 7, 2006, Plaintiffs filed this action under Title II of the ADA and Section 504 of the Rehabilitation Act of 1973 (hereinafter "Section 504"). (doc. 1, ¶ 1). Defendant responded by filing its Motion to Dismiss Plaintiffs' claims on May 3, 2006. (doc. 5). The court entered an Order on August 1, 2006 granting the motion in part and denying it in part.[3]

When the parties failed to reach a settlement through mediation, Plaintiffs filed a motion for summary judgment (doc. 39) and Defendant filed two motions for

---

[3] The motion was granted as to Plaintiffs' State law claims of negligence, recklessness, and wantonness (Count III), intentional infliction of emotional distress (Count IV), invasion of privacy (Count V), and outrage (Count VI), as well as all claims against individual defendants named as parties to the original complaint. (doc. 18). The motion was denied as to Plaintiffs' federal law claims under the ADA and § 504 of the Rehabilitation Act. (Id.).

summary judgment.[4] (docs. 40, 43). Defendant did not file an answer to Plaintiffs' complaint until three days after filing its motions for summary judgment. (doc. 56).

Plaintiffs responded by filing three Motions to Strike, one for each of Defendant's motions for summary judgment (docs. 48, 51), and a third as to Defendant's answer. (doc. 57). The court denied the motions as moot, and concluded that it lacked jurisdiction over the subject matter of this action. (See Order, doc. 66). The action was dismissed without prejudice via Order entered July 16, 2007. (Id.).

On July 26, 2007, Plaintiffs filed the pending Motion to Reconsider the court's dismissal of the action and denial of their motions. (doc. 67). Defendant responded in opposition to the motion on August 7, 2007. (doc. 69). Plaintiffs filed their reply on August 14, 2007. (doc. 70).

## III.  STANDARD OF REVIEW

In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly. *See United States v. Bailey*, 288 F.Supp.2d 1261, 1267 (M.D. Fla. 2003); *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992); *Spellman v. Haley*, 2004 WL 866837, 2 (M.D. Ala. Feb. 22, 2002) ("litigants should

---

[4] Defendant filed separate motions for summary judgment, one as to the claims of Ms. Parton and her parents, the other as to the claims of ADAP. (docs. 40, 43, respectively).

not use motions to reconsider as a knee-jerk reaction to an adverse ruling"). Indeed, as a general rule, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F.Supp.2d 1350, 1355 (M.D. Ala. 2003); *see also Rossi v. Troy State University*, 330 F.Supp.2d 1240, 1249 (M.D. Ala. 2002) ("Additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration"). *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) ("The [district] court properly recognized that revisiting the issues already addressed 'is not the purpose of a motion to reconsider,' and 'advanc[ing] new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed' is likewise inappropriate"); *American Marietta Corp. v. Essroc Cement Corp.*, 2003 WL 463493, 3 (6th Cir. Feb. 19, 2003) (similar).

Additionally, the Eleventh Circuit has declared that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F.Supp.2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider where movant advanced several new arguments);
5

*Coppage v. U.S. Postal Service*, 129 F.Supp.2d 1378, 1379-81 (M.D. Ga. 2001) (similar). *See also Richards v. United States*, 67 F.Supp.2d 1321,1322 (M.D.Ala. 1999) (same).

**IV.   ANALYSIS**

Plaintiffs argue that reconsideration is appropriate to correct the "clear error and manifest injustice" imposed by the court's dismissal of their claims. As explained *infra*, the court finds no such error or injustice, or any other basis to reconsider its previous decision in this action, and therefore denies the motion.

**A.   Ms. Parton is a "child with a disability"; hence, Plaintiffs' claims are subject to IDEA exhaustion.**

Plaintiffs do not dispute that Ms. Parton has an "orthopedic impairment," which is explicitly included in the list of disabilities that may cause a child to become subject to the IDEA. *See* 20 U.S.C. § 1401(3)(A)(i). They argue, however, that Ms. Parton is not a "child with a disability" under the IDEA because she does not require "special education," and therefore Plaintiffs' claims are not subject to IDEA exhaustion.

The court has already rejected this argument, explaining that the nature of Ms. Parton's disability is such that she may benefit from "special education," and hence, she is a "child with a disability" whose claims are subject to IDEA exhaustion. (See

Memorandum Opinion, doc. 65, pg. 6).  The IDEA provides that, to require "special education," a child must need "specially designed instruction," which includes various types of instruction in various settings "to meet the unique needs of a child with a disability."  20 U.S.C. § 1401(29).  Upon review of Ms. Parton's § 504 plan, it is clear that the accommodations afforded to Ms. Parton are, contrary to Plaintiffs' arguments, not limited to her physical access to Defendant's school buildings.  (doc. 55, exh. 31).  On the contrary, the plan also contemplates the type of "specially designed instruction" provided for by the IDEA.  For example, Ms. Parton is to be allowed "access to tutors if necessary," and "a packet of make-up work" following an absence from school that includes a "[l]ist of assignments," "[a]ny handouts that are needed to complete assignments," and a "[d]eadline for work to be completed."  (Id.).  Plaintiffs have not argued, or produced any evidence to support such an argument, that these  accommodations are provided to all students, including those without a disability, following an absence from school.  Rather, these accommodations are clearly related to Ms. Parton's disability, and are afforded to her by reason thereof.  Furthermore, the court can hardly agree that such accommodations are merely for the purpose of granting Ms. Parton physical access to Defendant's school buildings.  The court finds that these accommodates constitute "specially designed instruction," such that Ms. Parton benefits from "special education" and is

therefore a "child with a disability" whose claims are subject to IDEA exhaustion.[5]

> **B.   The cases cited by the court are not distinguishable from this action, and compel the court's conclusion that IDEA exhaustion applies to Plaintiffs' claims.**

As Plaintiffs correctly point out, this court relied heavily on the Eleventh Circuit's decision in *Babicz v. School Bd. of Broward County*, 135 F.3d 1420 (11th Cir. 1998), in dismissing this action. As explained *infra*, said reliance is not only correct, but is required, as *Babicz* is factually indistinguishable from this action and controlling upon this court.

In *Babicz*, the plaintiffs were children with § 504 plans similar to Ms. Parton's, under which the plaintiffs, who suffered from respiratory illnesses, were provided notice of their assignments and make-up work for days missed from school, and given access to inhalers, nebulizers, and oxygen while at school to accommodate their conditions. 135 F.3d at 1421 n. 6. Like Ms. Parton, nothing in *Babicz* indicates that the plaintiffs suffered from a <u>learning</u> disability of any kind. *Id.* Also like Ms.

---

[5] Plaintiffs do not dispute that Ms. Parton requires "related services" as defined by the IDEA, in that she needs, *inter alia*, special transportation to reach Defendant's school buildings and extracurricular programs. (Pl's Motion to Reconsider, doc. 67, pg. 3). The IDEA defines "related services" as services "as may be required to assist a child with a disability to benefit from <u>special education</u>." 20 U.S.C. § 1401(26) (emphasis added). Following the rules of statutory construction, the court is not inclined to assume, nor do Plaintiffs argue, that the term "special education" carries a different meaning in this section of the IDEA than in 20 U.S.C. § 1401(29), where that term is defined. Therefore, to require "related services," Ms. Parton must necessarily also required "special education" under the IDEA. Plaintiffs cannot concede that Ms. Parton requires "related services" but also argue that she does not require "special education."

Parton, the plaintiffs there did not have individualized education plans ("IEP") under the IDEA, nor were they considered by the defendant school board as being covered by the IDEA. *Id.* Nevertheless, the Eleventh Circuit concluded that the plaintiffs' claims, asserted under the ADA and the Rehabilitation Act, were subject to IDEA exhaustion. 135 F.3d at 1422.

Plaintiffs argue that *Babicz* is distinguishable from this action, namely because there, the Eleventh Circuit characterized the plaintiffs' claims as "regarding the denial of publicly financed special education" under the ADA and the Rehabilitation Act. *Id.* (emphasis added). Regardless of the semantics used by the Eleventh Circuit, however, the facts of *Babicz* are clearly indistinguishable from those presented in this action, and offer no basis for this court to find the reasoning of *Babicz* inapplicable here. Moreover, that the Eleventh Circuit considered the plaintiffs' claims in *Babicz* to relate to "special education," despite the purely physical nature of their disabilities, indicates that that court does not consider "special education" under the IDEA to be limited to cases involving learning disabilities, as Plaintiffs appear to aver.

Plaintiffs also take issue with this court's reliance on *M.T.V. v. DeKalb County School Dist.*, 446 F.3d 1153 (11th Cir. 2006), and *J.P. v. Cherokee County Bd. of*

*Educ.*, 218 Fed. Appx. 911 (11th Cir. 2007).[6] However, the only basis upon which Plaintiffs argue that these cases are distinguishable from this action is the fact that, in those cases, the plaintiff-students "were eligible for and received 'special education and related services'" under the IDEA prior to bringing their actions in federal court, unlike Ms. Parton. (Pl's Motion for Reconsideration, doc. 67, pg. 7).

This court did not cite to *M.T.V.* or *J.P.* on the basis that those cases are factually on point with this action, however. On the contrary, this court relied upon *M.T.V.* and *J.P.* because they <u>explicate</u> the reasoning of *Babicz*, which is not distinguishable from this case. (Memorandum Opinion, doc. 65, pp. 8-9). In those cases, the Eleventh Circuit explained that, consistent with its decision in *Babicz*, "we have interpreted the IDEA's exhaustion requirement as applying to a 'broad' spectrum of claims. . ." and that claims "relating to" the education of a disabled child shall be subject to IDEA exhaustion. *J.P.*, 218 Fed.Appx. at 2, citing *M.T.V.*, 446 F.3d at 1158. Significantly, the Eleventh Circuit did not mandate that only claims "relating to" the education of a <u>learning</u> disabled child be subject to IDEA exhaustion. The court further explained that "[IDEA] exhaustion [ ] applies to claims asserting the

---

[6] Fed. R. App. P. 32.1 provides: "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."

rights of disabled children under not only the IDEA, but also the ADA, § 504 of the Rehabilitation Act of 1973, and the Constitution." *Id.*, 218 Fed.Appx. at 1 n. 3, citing *M.T.V.*, 446 F.3d at 1158.  Hence, the position of the Eleventh Circuit cannot be more clear:  the same analysis applies to all cases involving <u>disabled</u> children.

Therefore, while Plaintiffs aver that IDEA exhaustion applies only to cases where the plaintiff-student is expressly covered by the IDEA, i.e., the student already has an IEP in place, asserts their claims under the IDEA, or was considered by the defendant as subject to the IDEA prior to the federal court action, this conclusion is not supported by Eleventh Circuit case law.  On this basis, the court finds that reconsideration of its dismissal of this action is not appropriate.

    **C.**    **Plaintiffs have failed to demonstrate that IDEA exhaustion would be futile or inadequate.**

"The burden of demonstrating futility is on the party seeking exemption from the exhaustion requirement." *M.T.V.*, 446 F.3d at 1159.  Plaintiffs argue that this court should reconsider dismissing this action because IDEA exhaustion is either futile or inadequate to redress their claims.  Their only basis for this argument, however, is that Ms. Parton does not require "special education" under the IDEA, and is therefore not subject to the IDEA, and so would not benefit from IDEA exhaustion.

As explained *supra*, however, Ms. Parton is subject to the IDEA.  Hence,

Plaintiffs' argument that their claims may not be redressed via IDEA exhaustion, is inapposite. Therefore, the court finds that Plaintiffs have failed to carry their burden of establishing that exhaustion is either futile or inadequate, and rejects the argument as wholly without merit.

### D. Plaintiffs are not excused from IDEA exhaustion.

As a final basis for reconsideration, Plaintiffs argue that they are excused from IDEA exhaustion because Defendant never indicated to them that Ms. Parton was covered by the IDEA, and therefore, they were under the impression that IDEA exhaustion did not apply to their claims. They cite to no Eleventh Circuit case law in support of this argument, but instead point to decisions of the Second Circuit for the proposition that a "local education agency" must notify a potential claimant of the IDEA's exhaustion requirement before their claims can be subject to IDEA exhaustion. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2nd Cir. 2002); *Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141 (2nd Cir. 1983), *cert. den'd*, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984).

Both of these cases are distinguishable from the present action. In *Weixel*, the Second Circuit concluded that the claims of the plaintiffs, who were acting *pro se*, should not be subject to IDEA exhaustion because the plaintiffs had not been aware that such remedies were even available to them. *Cf.*, 287 F.3d at 149 ("[w]hen

considering motions to dismiss a pro se complaint such as this, courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]. This is especially true when dealing with pro se complaints alleging civil rights violations"). Here, not only are Plaintiffs <u>not</u> acting *pro se*, but they are represented by counsel who specializes in the protection and advocacy of the civil rights of individuals with disabilities. (Compl., doc. 1, ¶ 11).[7] Furthermore, the court in *Weixel* specifically explained that exhaustion may be excused where, "as here, the parents have not been <u>notified that such remedies were available</u> to them." 287 F.3d at 149 (emphasis added). Therefore, exhaustion is excused under the reasoning of *Weixel* where "the failure of the defendants to notify plaintiffs of their procedural rights under the IDEA 'deprived [them] of the opportunity to take advantage of the procedural safeguards offered by the statute.'" *Id.*, quoting *Quackenbush*, 716 F.2d at 147. In the present action, Plaintiffs do not argue they were not aware that the IDEA's administrative remedies were available to them. On the contrary, they argue merely that Defendant did not explicitly inform them that they <u>must</u> satisfy IDEA exhaustion. However, the record fails to indicate that such failure by Defendant actually deprived Plaintiffs of the opportunity to take advantage of the statute's

---

[7] Lonnie Williams, of the Alabama Disabilities Advocacy Program, is of record as lead counsel for Plaintiffs in this action.

administrative remedies.

In *Quackenbush*, the Second Circuit found that exhaustion was excused due to the defendant's "misconduct" in allegedly forging the plaintiff's waiver of procedural safeguards that would otherwise have applied to her child's educational placement. 716 F.2d at 148. In that case, the court went so far as to suggest that the official who committed the alleged forgery might be subject to personal liability and punitive damages if the plaintiff's claims were proven at trial. *Quackenbush*, 716 F.2d at 148-49.

Here, Plaintiffs offer no evidence of such egregious conduct by Defendant. Rather, Plaintiffs argue merely that Defendant did not specifically inform them that they must seek relief through the IDEA's administrative process before asserting their claims in federal court. The court finds no misconduct in these facts sufficient to excuse exhaustion under the reasoning of *Quackenbush*.

The Eleventh Circuit does not appear to have addressed whether IDEA exhaustion is excused in this context. However, the Eleventh Circuit has concluded that exhaustion is excused in only two circumstances: "where resort to administrative remedies would be 1) futile or 2) inadequate." *N.B. by D.G. v. Alachua County School Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996). *See also M.T.V.*, 446 F.3d at 1160 ("'[t]he exhaustion of . . . administrative remedies is not required where resort to

administrative remedies would be 1) futile or 2) inadequate'"), quoting *N.B.*, 84 F.3d at 1379. As previously explained, neither of these circumstances applies to the present case.

## V. CONCLUSION

As stated *supra*, Plaintiffs' only basis for reconsideration is to correct a "clear error or manifest injustice" resulting from this court's dismissal of their claims. As the court finds no such error or injustice, and finds that its conclusion is not only supported by the law of this circuit, but is also mandated by it, the Motion for Reconsideration is due to be **DENIED**. A separate Order will be entered.

**DONE** this the fifteenth day of November, 2007.

                                                                    _____
                                                                    **VIRGINIA EMERSON HOPKINS**
                                                                    United States District Judge